SCHOTT, Judge.
On April 22, 1974, the Custodian of Notarial Records in and for the Parish of Orleans filed a rule against each Notary Public for the Parish of Orleans to test the surety on each notarial bond pursuant to LSA-R.S. 35:328, to have all notarial acts deposited in his office in accordance with R.S. 35:323, and to collect the annual fee prescribed by R.S. 35:327. Attached to his rule was a form of interrogatories seeking the information required to be filed by notaries with the Custodian under R.S. 35 :326. In response to this rule appellant, Glenn L. Morgan, Notary Public for the Parish of Orleans, filed a dilatory exception of prematurity and what he styled the peremptory exception of “unconstitutionality of R.S. 35:321 and seq.” From a judgment dismissing his exceptions appellant has appealed.
At the outset we notice that the procedural posture of the case is unusual in that the judgment appealed from is not a final judgment against appellant but only overruled his exceptions. There is no further judgment making the Custodian’s rule absolute against appellant.
However, the matter came to trial on a rule and, under LSA-C.C.P. Art. 2593, no answer was required of appellant. He relied on the theory that the unconstitutionality of the statutes complained of was patent from their very wording, he chose to offer no evidence in support of his position, and the issue of the unconstitutionality of the statutes was fully tried as though it had been pleaded in an answer. If we reverse the trial court and hold that the statutes which the Custodian seeks to enforce are unconstitutional no further proceedings will be authorized. On the other hand, if we affirm the trial court there will be a final disposition of the defense based upon unconstitutionality of the statutes, but the matter will have to be remanded to the trial court for further proceedings which the custodian might deem appropriate to enforce the statutes. With *623 this introduction we now consider the issues raised by appellant.
THE EXCEPTION OF PREMATURITY
As we have already indicated, the rule brought by the Custodian consisted of several parts, but it is only with respect to the payment of the annual fee that appellant contends the rule is premature. His position is that since R.S. 35:327 requires the payment of the annual fee “on or before September 1st of each year” the rule filed in April is premature on its face. The Custodian’s answer is well taken. He shows that in the discharge of his duty to collect the annual fee by September 1 from hundreds of notaries in Orleans Parish, the maximum number being fixed at 1900 by R.S. 35:251, he must initiate administrative action in advance of the deadline for the collection. His rule on April 22 directed the notaries, including appellant, to show cause “why he should not be ordered to pay the custodian the annual fee,” was clearly not an attempt to enforce collection of the fee before the deadline. The chronological development of this case demonstrates the wisdom of the Custodian’s initiating his proceedings well in advance of the September 1 deadline. Since the Custodian’s rule was clear that appellant was being ordered to show cause why he should not pay the fee before the deadline and since the Custodian was not attempting to make a premature collection of the fee, the exception of prematurity was properly overruled.
THE EXCEPTION OF UNCONSTITUTIONALITY
As already stated, we do not consider this defense of unconstitutionality to be an exception at all but rather a defense on the merits, which would ordinarily be incorporated in an answer but which did not have to be filed in answer since no answer is required to a rule to show cause in the first instance.
In his exception appellant contended that the entire statutory scheme covering Orleans notaries deprived them of equal protection of the law as required by the Fourteenth Amendment to the Constitution of the United States in that only Orleans notaries are required to pay the annual fee of $15, R.S. 35 :327, only Orleans notaries are required to post a $10,000 bond, R.S. 35:253, as compared to a $1,000 bond for notaries in other parishes (except Caddo Parish), R.S. 35:191, only Orleans notaries are subject to the annual rule to test the sureties, R.S. 35:328, and only Orleans notaries are subject to the special filing provisions established by R.S. 35:323. In this Court appellant has placed special emphasis on the first two differences mentioned, namely, the fee and the bond.
The Custodian’s principal contention is that the legislature in making these distinctions is presumed to have acted within its constitutional power despite the fact that laws in practice might result in some inequality. He maintains that the burden of proof was upon appellant to rebut this presumption and that his failure to offer any evidence to support his position is fatal to his case. Appellant, on the other hand, contends that these statutes on their face have no reasonable basis for making a distinction between the notaries of Orleans Parish and those of the other parishes, and he maintains that he should not be made to prove the Obvious or that which courts should judicially notice. Such a burden of proof would be especially onerous he contends since he would be cast in the role of trying to prove a negative, to wit, that there is no reasonable basis for the distinction or for the special class into which Orleans notaries are placed.
In McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393, the following principles were enunciated:
“The standards under which this proposition is to be evaluated have been set forth many times by this Court. Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of *624 citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State’s objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.”
Appellant’s theory is embodied in the final sentence quoted above, to wit, that “a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.” Appellant contends that no state of facts can reasonably be conceived to justify the discrimination made by the legislature against Orleans notaries and that no proof is needed beyond a reading of the statutes. We disagree.
One can readily criticize these provisions which require Orleans notaries to pay the $15 fee and to post a $10,000 bond. For instance, conditions have drastically changed since the amount of the bond was set by Act 42 of 1890. Again, any notary public is empowered to pass an act of sale affecting real estate located in Orleans Parish and have his sale processed by the Custodian’s office with the same risks to the parties to the act as are attendant upon the passage of such an act by an Orleans notary. Yet the non-Orleans notary need have a bond for only $1,000 whereas the Orleans notary must have a $10,000 bond to exercise the same powers. The risk against which the bond protects is the same in either case. Furthermore, the greatest risks or at least those occurring with the most frequency are those related to acts involving real estate which can be passed with as much ease by a non-Orleans Parish notary as by an Orleans notary.
But despite these considerations we can still conceive of reasonable facts which the legislature might have considered in establishing the distinction. For instance, R.S. 35:2 lists a number of powers granted to notaries, some of which are perhaps even more serious than those which affect real estate, and the power of the notary to function is limited to the Parish where he is commissioned, R.S. 35:2 and 10. Even the power of a notary to administer oaths and take acknowledgments is limited to the parish where he is commissioned. Op. Atty.Gen. 1934-36, p. 818 and 1920-22, p. 899. Perhaps the legislature believes that the density of the population in Orleans Parish is still such that the potential of the Orleans notary to exercise his official functions is still greater than that of the notary commissioned outside of Orleans Parish and that these conditions operate to justify greater protection to the public in the form of a higher bond for Orleans notaries than elsewhere. Perhaps the legislature believes that this higher potential for functioning requires a closer method of checking on Orleans notaries with the attendant annual fee and the regular reporting system provided by the statutes.
Furthermore, in providing for the $15 fees “to be used by the Custodian for additional compensation and expenses of his office” the legislature is aware that in other parishes the clerk of court himself, or, through a deputy or a department, operates the archives for the deposit of notarial acts, and the cost of operating such facilities is absorbed or defrayed by the overall schedule of fees charged by the clerk for the various operations of his office. The fact that there are separate offices in the Parish of Orleans for the Custodian as well as the Register of Conveyances, the Recorder of Mortgages, and other officials, as opposed to other parishes where the clerk operates all of these facilities himself, provides many complex questions as to whether it is more economical for one office or separate offices to operate these facilities and whether the public in general is paying more or less for such services. Obviously, these questions all ad *625 dress themselves to the legislature and we must presume that they had some reasonable basis for deciding that the $15' fee charged to Orleans notaries was a reasonable method of defraying some of the expenses involved in the operation of the Custodian’s facilities.
Perhaps the foregoing ruminations do not justify the discrimination against Orleans notaries in the opinion of many but from our point of view as a Court considering appellant’s position that the statutes are thereby unconstitutional we have concluded that they pass the test established in McGowan v. Maryland, supra, to wit, that the statutory discrimination will not be set aside since “a state of facts reasonably may be conceived to justify it.”
The principle on which we may have decided this case was recognized in State v. Guidry, 247 La. 631, 173 So.2d 192, where the argument that a criminal statute was unconstitutional because it applied to only one parish in the state was rejected by the Court as follows :
“[Defendant], of course, has made no showing that the relevant conditions and needs in Jefferson Davis Parish are the same as those of the other parishes. See McGowan v. State of Maryland, 366 U. S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393. The Court cannot assume the absence of differences when there is no proof.”
Neither can this Court in the instant case assume the absence of differences between Orleans and the other parishes with respect to regulation of notaries when appellant has provided no proof.
Accordingly, the judgment appealed from is affirmed. The case is remanded to the District Court for further action which the custodian may deem appropriate.
Affirmed and remanded.